# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARK THOMPSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 11 C 1712 |
| v. ) | |
| ) | |
| BOARD OF EDUCATION OF CITY ) | Judge Ronald A. Guzmán |
| OF CHICAGO, KEITH BROOKSHIRE, ) | |
| DEBORAH EDWARDS-CLAY and ) | |
| REGINALD EVANS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

In his sixteen-count, fifth amended complaint, plaintiff alleges that defendants violated Title VII, 42 U.S.C. § 1981 and the Illinois Whistleblower Act, breached oral and written contracts with him, and are liable for negligence, tortious interference with contract, intentional infliction of emotional distress, civil conspiracy and libel. The case is before the Court on defendants' Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss Counts V and VII-XVI[1] and both parties' motions to strike. For the reasons set forth below, the Court denies the motions to strike and grants in part, denies in part and strikes as moot in part defendants' motion to dismiss.

---

[1] Plaintiff voluntarily dismisses Counts X and XIV. (*See* Pl.'s Resp. Defs.' Partial Mot. Dismiss at 8, 12, 18.)

**Facts**

In 2005, plaintiff was employed by the Board as a physical education teacher and the athletic director of Piccolo Elementary Specialty School. (5th Am. Compl. ¶ 21.) Defendant Edwards-Clay was the principal of Piccolo. (*Id.* ¶ 7.)

On August 3, 2007, plaintiff "came to learn of possible plagiarism/test cheating from an informant teacher involving a Piccolo Assistant Principal." (*Id.* ¶ 23.) Plaintiff then researched Piccolo's 2006 ISAT test results and determined that the class taught by "the Assistant Principal's best friend" had the highest math scores in the school. (*Id.* ¶ 24.) Between August 7, and 15, 2007, plaintiff reported the possible cheating to the Chicago Public Schools' ("CPS") Area Instructional Officer ("AIO") who supervised Edwards-Clay, CPS' Department of Student Assessment, the Board's Law Department and the Illinois State Board of Education. (*Id.* ¶ 25.)

During the Board's investigation, it questioned the "informant teacher," who "changed her story." (*Id.* ¶ 27.) As a result, in November 2007, the Board and Edwards-Clay started disciplinary proceedings against plaintiff, claiming that he had fabricated the cheating allegations. (*Id.*) Plaintiff alleges that he gave the Board documents to support his version of events, after which he "never heard anything again concerning the disciplinary matter." (*Id.* ¶¶ 28-29.)

However, in February 2008, Edwards-Clay refused to sign his time sheets for his work as athletic coordinator and basketball coach, a prerequisite to his being paid. (*Id.* ¶ 30.) Edwards-Clay told another Piccolo coach that she refused to sign them because of the cheating allegations plaintiff made. (*Id.* ¶ 32.) Plaintiff filed a grievance about his failure to be paid, which the Board ignored. (*Id.* ¶ 33.)

In January 2008, defendant Evans, principal of Harlan School, offered plaintiff a position as a physical education teacher and coach of the cross county and track and field teams, which plaintiff accepted. (*Id.* ¶¶ 35-37.) Nonetheless, in May 2008, Evans told plaintiff he would not be allowed to coach the girls' cross country team because the Chicago Public School League Athletic Association ("CPSLAA") rules barred any coach from coaching teams of both genders in the same sport during the same season. (*Id.* ¶ 47.) Plaintiff says the CPSLAA rules contain no such restriction. (*Id.* ¶ 48.)

Consequently, Plaintiff continued to coach the Harlan boys' track and field team, but resigned as the coach of the boys' cross country team and accepted a position with Regina Dominican High School as head coach of the girls' track and field and cross country teams. (*Id.* ¶¶ 49, 51.)

In February 2009, Evans again asked plaintiff to be head coach of the Harlan boys' and girls' cross country teams and promised plaintiff that he would require the school's other coaches to abide by IHSA rules, including those barring coaches from requiring students to attend out-of-season practices. (*Id.* ¶¶ 56-57.) Plaintiff accepted the offer and resigned his position with Regina. (*Id.* ¶ 58.)

Throughout the 2009 school year, other Harlan coaches, including head football coach defendant Brookshire, repeatedly violated IHSA rules, which prevented students from participating in cross country meets. (*Id.* ¶¶ 62-70.) Plaintiff reported these violations to Evans, the Board and others, but no action was taken. (*Id.* ¶ 71.)

In January 2010, plaintiff reported Brookshire's continuing IHSA violations to Evans. (*Id.* ¶ 82.) In response, the "Board, Brookshire, and Evans concocted a plan to discriminate and retaliate against plaintiff based on his race, gender, and in retaliation for reporting illegal activities including

3

plagiarism/test cheating and violations of IHSA By-laws, in an effort to get him terminated from both his coaching and teaching positions." (*Id.* ¶ 84.)

On February 10, 2010, with encouragement from Brookshire and a Harlan assistant principal, the parent of a Harlan student complained to Evans about plaintiff's distribution of vitamin pills to her child and other participants in a running club that was not affiliated with Harlan or any other school. (*Id.* ¶¶ 85-87.) Evans then told DCFS "that a parent claimed Plaintiff had given her son some type of unknown 'pills,'" though the Evans knew the pills were vitamins, and asked the Board to remove plaintiff from the Harlan coaching staff. (*Id.* ¶¶ 89-90.) Consequently, the Board suspended plaintiff from coaching, citing his misconduct in providing pills to students. (*Id.* ¶ 92.)

During the Board's investigation into these allegations, the Board, Evans and Brookshire coerced a student into falsely accusing plaintiff of having distributed pills. (*Id.* ¶ 94.) Moreover, Brookshire and an assistant football coach falsely told Harlan students and staff, in person and via the Internet, that plaintiff had given sexual enhancement pills to students. (*Id.* ¶¶ 97-98.)

On March 23, 2010, the Board and DCFS concluded that the pill allegations against plaintiff were unfounded. (*Id.* ¶¶ 99-100.)

In July 2010, plaintiff learned that the Board and Evans planned to fire him and the only other male physical education teacher but retain the two female physical education teachers, purportedly for budgetary reasons. (*Id.* ¶¶ 105-10.) Later, however, plaintiff discovered that, after eliminating the two positions, Evans was going to hire Brookshire to fill one of them. (*Id.* ¶ 111.) Consequently, plaintiff told the Board that Evans tolerated IHSA violations and that Brookshire's claim to have done student teaching at Harlan was false. (*Id.* ¶¶ 112-13.) The Board rejected both claims.

4

When plaintiff lost his position as a physical education teacher, he was given one as a U.S. History teacher at Harlan. (*Id.* ¶¶ 117-22.) Plaintiff says he was not qualified and did not want to teach that subject. (*Id.*)

On August 26, 2010, plaintiff filed an EEOC charge alleging that the Board and Evans transferred him to the history position because of his sex, and received a right to sue letter on October 1, 2010. (*Id.* ¶ 124.) On October 7, 2010, Evans gave plaintiff notice of a pre-disciplinary hearing based on the pill allegations that the Board had previously rejected and an allegation that plaintiff drove students in his car without a signed parental permission form, though Evans knew that plaintiff and other teachers did so routinely and had not disciplined white teachers who did so. (*Id.* ¶¶ 127-37.) In November 2010, after a hearing on these allegations, Evans suspended plaintiff without pay for fourteen days. (*Id.* ¶ 140.)

In late November 2010, plaintiff filed a second EEOC charge alleging that he had been suspended because of his race and in retaliation for his prior EEOC filing. (*Id.* ¶ 142.) In December 2010, he filed this suit.

On March 11, 2011, Evans observed plaintiff's U.S. History class and evaluated plaintiff's performance as "Unsatisfactory." (*Id.* ¶ 144.) The same month, the Board denied plaintiff's appeal of his suspension. (*Id.* ¶ 147.) On April 23, 2011, the Board "approved a Warning Resolution against Plaintiff," which was posted on the Board's website. (*Id.* ¶ 148.)

Thereafter, a physical education position became available at Harlan for the 2011-12 school year. (*Id.* ¶ 149.) Evans refused to transfer plaintiff to that position and hired a less-experienced white teacher for the job. (*Id.* ¶ 150.)

In May 2012, Evans gave plaintiff an "Unsatisfactory" evaluation that contained false allegations about plaintiff's teaching performance. (*Id.* ¶¶ 152-54.) On May 25, 2012, plaintiff filed a complaint with the Board, alleging that Evans gave him a poor evaluation in retaliation for filing this lawsuit. (*Id.* ¶ 155.) The Board held a hearing on plaintiff's charge and rejected it. (*Id.* ¶¶ 157-58.)

## Discussion

### Motions to Strike

Plaintiff asks the Court to strike various portions of defendants' motion to dismiss and defendants ask the Court to strike various allegations of the fifth amended complaint. Rule 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Generally, "motions to strike are disfavored" because they do not expedite resolution of a case. *See Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir 1989). Such is the case here. Plaintiff seeks to strike portions of a brief and defendants seek to strike allegations of the complaint that they deem irrelevant, neither of which will advance the disposition of the case. Therefore, the Court denies the motions.

### Motion to Dismiss

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). "[A] complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Defendants argue that the claims asserted in Counts V, VII, VIII and XII-XVI are barred by the limitations periods applicable to them. However, untimeliness is an affirmative defense, and thus not a proper basis for a Rule 12(b)(6) dismissal. *See Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("Orders under Rule 12(b)(6) are not appropriate responses to the invocation of defenses, for . . . . [c]omplaints need not contain any information about defenses and may not be dismissed for that omission.").

Alternatively, defendants argue that the Illinois Tort Immunity Act shields them from the Whistleblower Act, tortious interference and negligent supervision claims asserted in Counts V, XII and XIII, respectfully, and his requests for punitive damages from the individual defendants for these claims because they arise from the individual defendants' exercise of discretion. *See* 745 Ill. Comp. Stat. 10/2-201 ("[A] public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."); 745 Ill. Comp. Stat. 10/2-213 ("[A] public employee is not liable to pay punitive or exemplary damages in actions brought against the employee based on an injury allegedly arising out of an act or omission occurring within the scope of employment of such an employee serving in a position involving the determination of policy or the exercise of discretion when the injury is the result of an act or omission occurring in the performance of any legislative, quasi-legislative or quasi-judicial function, even though abused."); 745 Ill. Comp. Stat. 10/2-109 ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."). However, statutory immunity is an

affirmative defense, and "the distinction between discretionary [acts]," to which the statute applies, and "ministerial functions," to which it does not, "resists precise formulation, and . . . must be made on a case-by-case basis." *Snyder v. Curran Twp.*, 657 N.E.2d 988, 992-93 (Ill. 1995). Accordingly, this is not a proper basis for a Rule 12(b)(6) dismissal. *See Xechem*, 372 F.3d at 901.

The Court agrees, however, that the Tort Immunity Act gives the Board unqualifiedly immunity from punitive damages. *See* 745 Ill. Comp. Stat. 10/2-102 ("Notwithstanding any other provision of law, a local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party. . . ."). Thus, the Court dismisses with prejudice plaintiff's state claims against the Board for punitive damages.

Defendants also argue that Counts XI, XII, XV and XVI are inadequately pled. In Count XI, plaintiff alleges that defendants breached an agreement with him that is reflected in "CPS Policy Manual section 102.8." (5th Am. Compl. ¶¶ 241-43.) In his response brief, plaintiff eschews these allegations and argues that the claim is based on his oral agreement with Evans in February 2009 to be the head coach of the Harlan boys' and girls' cross country teams. (*See* Pl.'s Resp. Defs.' Partial Mot. Dismiss at 12-14.) Plaintiff has not, however, alleged the elements necessary to state a claim for breach of this purported agreement. *See Mannion v. Stallings & Co., Inc.*, 561 N.E.2d 1134, 1138 (Ill. App. Ct. 1990) (breach of contract claim requires allegations of "offer and acceptance, consideration, definite and certain terms of the contract, plaintiff's performance of all required contractual conditions, the defendant's breach of the terms of the contract, and damages resulting from the breach"). Accordingly, the Court dismisses without prejudice Count XI.

In Count XII, plaintiff asserts that the Board, Brookshire and Evans tortiously interfered with his contract to teach physical education and coach at Harlan. To state such a claim, plaintiff must

allege: "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989) (quotations omitted). Because an entity cannot interfere with one of its own contracts, plaintiff has not and cannot satisfy the first element with respect to the Board. *Knickman v. Midland Risk Servs.-Ill., Inc.*, 700 N.E.2d 458, 461-62 (Ill. App. Ct. 1998) ("[A]n entity cannot be liable in tort for interfering with its own contract. To be tortious, the interference must come from [one who is] not a party to the contract."). He has, however, stated a claim against Brookshire and Evans, who are alleged to have interfered with plaintiff's contract to advance their own interests, not those of the Board, and/or to harm plaintiff, allegations that are sufficient to state a tortious interference claim against these Board agents. *See Cress v. Recreation Servs., Inc.*, 795 N.E.2d 817, 842-43 (Ill. App. Ct. 2003) ("[W]here the plaintiff alleges that the defendant, in his capacity as a corporate officer, tortiously interfered with a contract between the plaintiff and that corporation, the plaintiff must plead that the defendant acted outside the qualified privilege he enjoys as a corporate officer to influence the actions of the corporation," *i.e.*, that defendant "act[ed] *solely* for [his] own gain or *solely* for the purpose of harming the plaintiff . . . .") (quotation, alteration and citations omitted) (emphasis original).

In Count XV, plaintiff seeks to hold all defendants liable for intentional infliction of emotional distress ("IIED"), which requires allegations that "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress." *Swearnigen-*

9

*El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010); *see Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976) (stating that actionable conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency") (quotation omitted). Construed liberally, plaintiff's allegations are sufficient to suggest that defendants' conduct was outrageous, but not that they knew their conduct was likely to cause plaintiff severe emotional distress or that plaintiff, in fact, suffered such distress. Thus, the Court dismisses without prejudice the IIED claims in Count XV.

In Count XIV, plaintiff alleges that all defendants conspired to deprive him of his positions as a physical education teacher and coach at Harlan. "A conspiracy is an agreement or combination of two or more people or entities to do an unlawful act or to do a lawful act by unlawful means." *Salaymeh v. InterQual, Inc.*, 508 N.E.2d 1155, 1158 (Ill. App. Ct. 1987). Because "[t]he acts of an agent are considered in law to be the acts of the principal," a conspiracy "does not exist between a principal and an agent." *Id.* Therefore, the Board cannot be liable for conspiracy. Construed liberally, however, the complaint states a claim against Brookshire and Evans for conspiring to interfere tortiously with his contract. *See Redelmann v. Claire Sprayway, Inc.*, 874 N.E.2d 230, 240 (Ill. App. Ct. 2007) ("The elements of a civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act.").

## **Conclusion**

For the reasons set forth above, the Court denies plaintiff's motion to strike [203] and grants in part, denies in part and strikes as moot in part defendants' partial motion to dismiss and strike [199], as follows: (1) the motion is stricken as moot as to the breach of contract claim in Count X and the libel claim in XIV, which plaintiff voluntarily dismisses; (2) the motion is granted as to the breach of contract claim in XI and the IIED claims in Count XV, which are dismissed without prejudice, the tortious interference claim asserted against the Board in Count XII, the conspiracy claim asserted against the Board in Count XVI and any state-law claim for punitive damages asserted against the Board, which are dismissed with prejudice; (3) the motion is denied as to the Whistleblower Act claims in Count V, the 42 U.S.C. § 1981 claims in Counts VII and IX, the Title VII claim in Count VIII, the tortious interference claims asserted against the individual defendants in Count XII, the negligent supervision claim in Count XIII, the conspiracy claims asserted against the individual defendants in Count XVI and as to striking various allegations. Plaintiff has fourteen days from the date of this order to amend Counts XI and XV *only*. (Plaintiff may not make any other amendments or add any claims without leave of Court.) If plaintiff fails to do so, the Court will dismiss with prejudice the claims asserted in those counts.

**SO ORDERED.**                                        **ENTERED: August 13, 2013**

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**