IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARK THOMPSON, | )<br>) |
| Plaintiff, | )<br>) |
| | ) No. 11 C 1712 |
| v. | )<br>) |
| BOARD OF EDUCATION OF<br>CITY OF CHICAGO, KEITH<br>BROOKSHIRE, DEBORAH<br>EDWARDS-CLAY and<br>REGINALD EVANS, | ) Judge Ronald A. Guzmán<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

In his fifth amended complaint, plaintiff alleges that the Chicago Board of Education ("Board") and three of its employees, Reginald Evans, Deborah Edwards-Clay and Keith Brookshire, violated Title VII (Counts I, IV, and VIII), 42 U.S.C. § 1981 (Counts II, III, VII, and IX) and the Illinois Whistleblower Act (Count V) and are liable for breach of contract, negligent supervision, tortious interference, and conspiracy (Counts VI, XII, XIII, and XVI).[1] The case is before the Court on the defendants' motions for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons set forth below, the Court grants in part and denies in part the Board, Evans and Edwards-Clay's motion and grants Brookshire's motion.

---

[1] Counts X, XI, XIV and XV were previously dismissed. (*See* Pl.'s Resp. Defs.' Partial Mot. Dismiss at 8, 12; Mem. Op. & Order at 11 (Aug. 13, 2013).)

**Facts**

Plaintiff is an African-American teacher, certified in physical education ("PE") and U.S. history. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 1.)[2] From August 2005 to December 2007, he worked at Piccolo Elementary Special School, where defendant Deborah Edwards-Clay, who is African American, was the principal. (*Id.* ¶ 3.) Plaintiff taught PE and coached seventh and eighth grade basketball. (*Id.* ¶¶ 1, 8.) Like all Piccolo coaches, plaintiff was required to keep track of the hours he worked and submit them to Edwards-Clay for approval. (*Id.* ¶ 12.) When he did so for the 2007-08 basketball season, however, Edwards-Clay refused to approve payment for all of the hours he claimed because she thought they were overstated. (*Id.* ¶¶ 13-14.) Plaintiff filed a grievance to recover for the unpaid coaching hours and was awarded $630.00 but contends that he is still owed $416.00. (*Id.* ¶ 15).

In January 2008, plaintiff transferred to Harlan Community Academy High School, where defendant Reginald Evans, an African American, is the principal. (*Id.* ¶¶ 1, 4.) Plaintiff taught PE and coached track and field. (*Id.* ¶ 16.) While coaching track, plaintiff bought vitamins for his team members, which he gave to their parents/guardians. (*Id.* ¶ 18.)

In the fall of 2009, defendant Keith Brookshire became Harlan's head football coach, but he was not, and never has been, a Harlan PE teacher. (*Id.* ¶¶ 68, 70.) After a 2009 football game, a parent of one of the players told Brookshire that plaintiff had given pills to her son. (*Id.* ¶¶ 19-20.) Brookshire reported the conversation to Evans. (*Id.* ¶ 20.) Evans says plaintiff denied the

---

[2]By operation of Local Rule 56.1, plaintiff is deemed to have admitted all of the properly-supported facts defendants assert in their LR 56.1(a) Stmt. to which plaintiff did not respond or responded with inadmissible evidence.

allegation, so he decided not take any disciplinary action at that time. (Defs.' LR 56.1(a) Stmt. ¶ 22.) Plaintiff denies that Evans ever spoke to him about the incident. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 22.)

In February 2010, a security guard found six blue pills in the backpack of a Harlan student. (*Id.* ¶ 23; *see id.*, Ex. 7, Investigative Mem. at 2 (Mar. 23, 2010).) The student told Evans that plaintiff had given him the pills. (*Id.* ¶ 24.) When Evans questioned plaintiff, he said the pills were vitamins and that he had given them to the student's parent. (*Id.* ¶ 25.)

On February 9, 2010, the parent of another Harlan student complained to the assistant principal that plaintiff had taken her son to the store to buy vitamins. (*Id.* ¶ 27.) At Evans' request, the parent submitted a written complaint, which said that in addition to buying vitamins, plaintiff picked her son up for weekend and late night training sessions and took him out for meals in restaurants. (Def.'s LR 56.1(a) Stmt., Ex. C, Evans Decl. ¶ 13.) On February 10, 2010, Evans suspended plaintiff from coaching pending an investigation into the allegations against him. On February 12, 2010, Evans reported the allegations to the Illinois Department of Children and Family Services ("DCFS"). (*Id.* ¶¶ 11, 13; Pl.'s LR 56.1(b)(3)(B) ¶ 34; *id.*, Stmt., Ex. 14, DCFS Investigation Transition/Handoff Document.)

On February 25, 2010, Evans received a memo from the Board president saying that City-wide staffing cuts would have to be made for the 2010-11 school year. (Defs.' LR 56.1(a) Stmt., Ex. C, Evans Decl. ¶ 18; *see id.*, Ex. 2, Mem. from Huberman to CPS Employees (Feb. 25, 2010).)

On March 4, 2010, Board attorney James Ciesil gave the following "directives" to plaintiff:

3

> 1) [You] must not transport any CPS student in any vehicle without the written consent of the principal, Reginald Evans, and the parent or legal guardian of the student. . . .
>
> 2) [You] may not solicit, meet with, or discuss with students or parents on CPS grounds any off-campus event (such as a track club) without the written consent of the principal; and
>
> 3) [You] may not give, provide, offer or recommend to any CPS student any vitamin, drug, caffeine booster, or any other over-the-counter or prescription medication. . . .

(Defs.' LR 56.1(a) Stmt., Ex. F, Ciesil Decl., Ex. 1, Email from Ciesil to J. Thompson (Mar. 4, 2010).) Ciesil also told plaintiff that "if [you] violate[] any of these directives it shall be considered gross insubordination and irremediable misconduct subjecting [you] to severe disciplinary action, up to and including dismissal." (*Id.*)

On March 23, 2010, the Board's investigator gave Ciesil his report about the allegations against plaintiff, which said that:

> Credible evidence **does exist** to support the allegation that on varying dates in 2009 and 2010, [plaintiff] transported 6 to 7 Harlan HS students in his personal vehicle who are members of the school's track team for practice workouts without obtaining written permission from the (a) parent(s) or the principal.
>
> Credible evidence **does exist** to support the allegation that on varying dates in 2009, [plaintiff] gave over-the-counter-vitamins to the (a) parent(s) of student athletes as part of his training regime for the Harlan HS track team.

(*See* Pl.'s LR 56.1(b)(3)(B), Ex. 7, Investigative Mem. at 6 (Mar. 23, 2010)) (emphasis original).

Ciesil did not, however, give the findings to Evans until September 23, 2010. (*See* Defs.' LR 56.1(a), Ex. C, Evans Decl. ¶ 14; Pl.'s Stmt. Add'l Facts, Ex. 6, CPS Decision at 2 (Mar. 28, 2011).) The Board attributes the six-month delay between the end of the investigation and its transmission of the findings to Evans to the law department's heavy workload, the fact that school-based discipline is not conducted over the summer months and its assumption that plaintiff would

4

abide by the Board's March 4, 2010 directives about pill distribution and student transportation. (Defs.' LR 56.1(a) Stmt. ¶¶ 37-38.)

On April 20, 2010, Evans received another memorandum from the Board president that said the school-based budget process would begin April 23, 2010 and end May 7, 2010. (*Id.*, Ex. C, Evans Decl., Ex, 3, Mem. from Huberman to Principals at 2 (Apr. 20, 2010).) Based on this information, Evans believed that he had to make staff reductions at Harlan by May 7, 2010. (Defs.' LR 56.1(a) Stmt., Ex. C, Evans Decl. ¶¶ 18-19.)

After reviewing the seniority and certifications of all Harlan teachers and considering anticipated vacancies, Evans closed the PE teacher positions held by plaintiff and John Binish because: (1) PE is not a core academic subject; (2) plaintiff and Binish were the least senior PE teachers;[3] (3) Evans hoped the transfer would reduce the friction that had developed between plaintiff and other members of the Harlan coaching staff; and (4) Evans could transfer plaintiff, who was certified to teach history, to an open history position that had the same salary and benefits as the PE job but was further away from the gym. (*Id.* ¶ 19; *see* Pl.'s Stmt. Add'l Facts, Ex. 38, Email from Pl. to Evans (Jan. 20, 2010) (complaining that Brookshire denigrated the track program and monopolized the time of students who were on both the football and track teams).)

On June 24, 2010, Evans gave plaintiff an "Excellent" rating on his performance review, citing plaintiff's "[c]ompliance with the policies, rules, and regulations of the school system and of the building" as one of his strengths. (Pl.'s Stmt. Add'l Facts, Ex. 2, 6/4/10 Evaluation.)

---

[3]Plaintiff contends that Binish and Brookshire were the least senior PE teachers (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 49), but there is no dispute that Brookshire never taught PE at Harlan (*see id.* ¶¶ 69-70).

On August 9, 2010, CPS approved Evans' request to transfer plaintiff from the PE position to the history position. (*See* Pl.'s LR 56.1(b)(3)(B) Stmt., Ex. 18, Email from CPS Human Resources to Hudson, Buckner & Evans (Aug. 9, 2010).)

Sometime thereafter, a teaching position was added to Evans' budget, which he decided to fill with a PE teacher. (Defs.' LR 56.1(a) Stmt., Ex. C, Evans Decl. ¶ 23; Pl.'s LR 56.1(b)(3)(B) Stmt., Ex. 19, Pl.'s Dep. at 353.) Plaintiff, who says he was not "highly qualified" to teach history as required by the No Child Left Behind Act, asked Evans to transfer him back to the PE job. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 53-55.) Evans refused, and asked assistant principal Maudree Hudson to help plaintiff obtain "highly qualified" status through Illinois' High Objective Uniform State Standard of Evaluation ("HOUSSE"), pursuant to which veteran teachers are given credit for, among other things, time teaching the core subject area, mentoring other teachers and participating in conferences and workshops. (Defs.' LR 56.1(a) Stmt., Ex. C, Evans Decl. ¶¶ 21-22; *id.*, Ex. 7, Letter to McDermott & Evans from Hudson (Feb. 29, 2012); *see* Pl.'s LR 56.1(b)(3)(B) Stmt., Ex. 21, The Illinois HOUSSE.) After meeting with plaintiff, Hudson concluded that plaintiff's contention that he was not "highly qualified" under HOUSSE was based on a deliberate refusal to include all of his relevant experience. (Defs.' LR 56.1(a) Stmt., Ex. C, Evans Decl., Ex. 7, Letter to McDermott & Evans from Hudson (Feb. 29, 2012).)

On August 26, 2010, plaintiff filed a sex discrimination charge with the EEOC. (*See* Defs.' LR 56.1(a) Stmt., Ex. L, 8/26/10 EEOC Charge.) The Board received the charge on September 1, 2010. (*See* Pl.'s LR 56.1(b)(3)(B) Stmt, Ex. 15, EEOC Charge (showing Board stamp 9/1/2010).)

6

On September 23, 2010, Ciesil gave the findings of the Board's investigation into the allegations against plaintiff to Evans. (Defs.' LR 56.1(a) Stmt., Ex. C, Evans Decl. ¶ 14; Pl.'s Stmt. Add'l Facts, Ex. 6, CPS Decision at 2 (Mar. 28, 2010).)

On October 7, 2010, Evans gave plaintiff a notice of pre-disciplinary hearing based on the investigation, and the next month he notified plaintiff that he was seeking to suspend him for two weeks without pay. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 41-42.) On February 9, 2011, a disciplinary hearing was held, and on March 28, 2011, the Board suspended plaintiff. (*See* Pl.'s Stmt. Add'l Facts, Ex. 6, CPS Decision at 1 (Mar. 28, 2011).)

## **Discussion**

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

**Section 1981 Claims Against the Board**

In Counts II, III, VII and IX, plaintiff alleges that the Board discriminated and retaliated against him in violation of § 1981.[4] To defeat the Board's motion on these claims, plaintiff must offer evidence that suggests the violation of § 1981 rights "was caused by a custom or policy within the meaning of *Monell* and subsequent cases." *Looper Maint. Serv. Inc. v. City of Indianapolis*, 197 F.3d 908, 913 (7th Cir. 1999) (quotation omitted). A "policy," in this sense, is an express policy, a widespread and permanent practice, or action by a person with final policymaking authority. *McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000). Plaintiff does not offer evidence that suggests the Board has an express policy or widespread practice of discriminating against African-Americans or retaliating against employees who complain about such discrimination, and the school principals who allegedly made the contested decisions are not final policymakers for the Board. *See Wragg v. Vill. of Thornton*, 604 F.3d 464, 468 (7th Cir. 2010) ("Whether a particular official has final policymaking authority is a question of state law . . . ."); *see also* 105 Ill. Comp. Stat. 5/10-20.7, 10-21.1, 10-22.4 (vesting school boards with authority over teacher employment); *Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1061 (7th Cir. 1998) ("Nothing in the [Illinois] School Code allows us to infer that a . . . principal has been delegated policymaking authority with respect to personnel decisions."). Because there is not evidence that suggests

---

[4]Defendants argue that plaintiff's failure to plead the § 1981 claims as § 1983 violations is fatal to his claims. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989) (holding that "§ 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units"). Even if that is true, there is no prejudice to considering these as § 1983 claims, as the evidence needed to sustain a claim under either statute is the same. *See Naficy v. Ill. Dep't of Human Servs.*, 697 F.3d 504, 509 n.3 (7th Cir. 2012).

8

plaintiff's alleged injuries resulted from the execution of Board policy, the Board is entitled to judgment as a matter of law on his § 1981 claims.

**Title VII Sex Discrimination Claims Against the Board**

In Count I, plaintiff alleges that the Board removed him from coaching, suspended him for two weeks without pay, transferred him to history and refused to transfer him back to PE because of his sex in violation of Title VII. Plaintiff says these are disparate impact claims, but that theory is inapt. "[A]n employer is liable [under a disparate impact theory] when a facially neutral employment practice disproportionately impacts members of a legally protected group." *Farrell v. Butler Univ.*, 421 F.3d 609, 616 (7th Cir. 2005). To establish a prima facie case under this theory, plaintiff must "identify the specific employment practices" alleged to have a disparate impact and offer statistical evidence that suggests there is a causal relationship between the practices and the impact. *Id.* Plaintiff does not contest practices or policies that apply to all Board employees or offer any statistics to support a disparate impact claim. Rather, he contests decisions that affected only him. Thus, to the extent plaintiff asserts Title VII disparate impact claims, the Board is entitled to judgment as a matter of law on them.

Plaintiff fares no better if the Court construes Count I as asserting disparate treatment claims. To defeat defendant's motion on such claims, plaintiff must: (1) offer direct or circumstantial evidence of the Board's anti-male bias; or (2) show that defendant subjected him but not a similarly-situated female employee to an adverse employment action, though he was meeting its legitimate performance expectations, and gave an incredible reason for doing so. *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 719-24 (7th Cir. 2005). Plaintiff has no direct evidence of the

Board's alleged bias. Moreover, he cannot make a prima facie case of discrimination under the indirect method because: (1) it is undisputed that the transfer to history did not cause his salary to decrease or otherwise adversely impact the conditions of his employment; and (2) he offers no evidence that a similarly situated woman received more favorable treatment. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 52); *see Crady v. Liberty Nat. Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993) ("[A] materially adverse change in the terms and conditions of employment . . . . might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."). Accordingly, the Board is entitled to judgment as matter of law on Count I.

**Retaliation Claims Against the Board & Evans**

In Counts IV and VIII, plaintiff alleges that the Board violated Title VII, and in Count III he alleges that Evans violated § 1981, by suspending him without pay for two weeks, refusing to assign him to a PE position for the 2011-12 school year and giving him an unsatisfactory performance review for 2011-12 in retaliation for his complaints of discrimination.[5] As previously discussed, the Board's refusal to assign plaintiff to a PE position for the 2011-12 school year is not an actionable adverse job action. The Court assumes, without deciding, that a negative evaluation can

---

[5]Plaintiff says these actions were also in retaliation for complaints he made at a board meeting about Brookshire's student teaching records and his flouting of IHSA rules by coaching year-round. These complaints cannot, however, be the basis of either a Title VII or a § 1981 retaliation claim. *See* 42 U.S.C. § 2000e-3(a) (prohibiting retaliation for complaints made about discrimination that is barred by Title VII); *Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 848 (7th Cir. 2007) (retaliation under § 1981 is actionable for complaints of race discrimination).

be an adverse action in this context. *See Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 741 (7th Cir. 2011) (stating that "a negative performance evaluation could constitute an adverse action" for a retaliation claim).

One way plaintiff can defeat defendants' motion on these claims is to offer evidence of their retaliatory intent, *i.e.*, an explicit acknowledgment of retaliation or bits of circumstantial evidence such as "suspicious timing, ambiguous statements, [or] behavior towards other employees" that suggest unlawful intent. *Volovsek v. Wis. Dep't of Agric., Trade & Consumer Protection*, 344 F.3d 680, 689 (7th Cir. 2003).

Viewed in plaintiff's favor, the record contains sufficient circumstantial evidence to suggest that he was suspended in retaliation for filing the August 2010 EEOC charge, including that: (1) the Board completed its investigation in March 2010 but did not give the findings to Evans until September 2010; (2) Evans rated plaintiff's performance during the 2009-10 school year as "Excellent," though he had been accused of distributing pills to students and driving them in his car multiple times during that school year; (3) plaintiff filed a sex discrimination charge with the EEOC on August 26, 2010; and (4) Evans received the findings from the Board in late September 2010 and initiated the suspension proceedings against plaintiff in October 2010. (Defs.' LR 56.1(a) Stmt., Ex. C, Evans Decl. ¶¶ 14-16; Pl.'s Stmt. Add'l Facts ¶ 2; *id.*, Ex. 6, CPS Decision at 2 (Mar. 28, 2010); Pl.'s LR 56.1(b)(3)(B) ¶¶ 41-42; *id.*, Ex. 7, Investigative Mem. from Moore & Ardell to Ciesil (Mar.

23, 2010).)⁶ Accordingly, the Court denies the Board's motion for summary judgment as to the Title VII retaliation claims in Counts IV and VIII.

There is no evidence, however, that suggests Evans gave plaintiff a poor performance evaluation for 2011-12 in retaliation for his 2010 filing of a race discrimination charge. *See Pantoja*, 495 F.3d at 848 (retaliation for race discrimination complaint gives rise to § 1981 retaliation claim). It is undisputed that Evans gave plaintiff the unfavorable review in June 2012, almost eighteen months after plaintiff filed the race charge. (*See* Defs.' LR 56.1(a) Stmt., Ex. L, EEOC Charges; *id.*, Ex. C, Evans Decl. ¶¶ 27-31.) That time period is too lengthy, by itself, to support an inference of retaliation, *see, e.g., Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 711 (7th Cir. 2002), and plaintiff offers no other evidence to bolster it. Therefore, the Court grants Evans' motion for summary judgment on Count III.

**Section 1981 Discrimination Claims Against Evans & Edwards-Clay**

In Counts II and IX, plaintiff alleges that Evans discriminated against him in violation of § 1981. Having no direct evidence of discriminatory intent, plaintiff must use the burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to defeat Evans' motion. *Alexander v. Wis. Dep't. of Health & Family Servs.*, 263 F.3d 673, 682 (7th Cir. 2001); *see Humphries v. CBOC W., Inc.*, 474 F.3d 387, 403-04 (7th Cir. 2007) (stating that the same standards apply to Title VII and § 1981 retaliation claims), *aff'd*, 553 US. 442 (2008). To do so, he must first

---

⁶The other facts plaintiff offers are not supported by admissible evidence. (*See* Pl.'s Stmt. Add'l Facts ¶ 7 (citing to an undated, unsworn, unauthenticated note); *id.* ¶ 22 (citing to an out-of-court statement by a board investigator without offering a basis for deeming it to be an admission by the Board); *id.* ¶ 37 (citing to hearsay from an unidentified person).)

12

establish a prima facie case of discrimination by offering, among other things, evidence that suggests Evans gave more favorable treatment to a similarly situated non-African-American employee. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). "Employees are similarly situated if they are directly comparable in all material respects." *Id.* That means plaintiff must show that he and the comparable employee "dealt with the same supervisor, were subject to the same standards, and . . . engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or [defendant's] treatment of them." *Ezell v. Potter*, 400 F.3d 1041, 1049-50 (7th Cir. 2005) (quotations omitted).

The comparable employees plaintiff identifies are Thomas Gouterman and Jon Binish. (*See* Pl.'s Stmt. Add'l Facts ¶ 8.) But plaintiff asserts that Gouterman and Binish were his assistant coaches, who drove students in their own cars to "assist[]" and "help[]" him. (*See id.* ("Plaintiff['s] . . . Caucasian assistant track coaches Jon Binish and Thomas Gouterman also helped him drive students in their personal vehicle [sic] during the track season, but no action was ever taken to investigate or discipline them."); *id.*, Ex. 8, Email from Pl. to Ciesil & Evans (Oct. 12, 2010) (stating that Gouterman and Binish "assisted" plaintiff in driving students).) Given Gouterman and Binish's undisputed status as plaintiff's subordinates, they are not, as a matter of law, comparable to plaintiff. *See Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1042 (7th Cir. 1993) (holding that manager was not similarly situated to subordinate); *see also Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972 (8th Cir. 1994) (stating that plaintiff, an African-American security guard supervisor who was discharged for failing to render assistance, was not similarly situated to his white subordinate who also failed to render assistance but was not discharged for it). Because plaintiff has not made a prima facie case of discrimination, Evans is entitled to judgment on these claims.

In Count VII, plaintiff alleges that Edwards-Clay violated § 1981 by refusing to pay him for all of his coaching hours at Piccolo. The comparable non-African-American employee plaintiff identifies for this claim is Timothy Feltman, who plaintiff says was paid for coaching services he did not provide. (*See* Pl.'s Stmt. Add'l Facts ¶¶ 13-14.) However, the evidence plaintiff cites to support this assertion is inapposite, inadmissible or both. (*See id.*, Ex. 13 (Undated, unauthenticated, electronic messages between plaintiff and unidentified students); *id.*, Ex. 14 (Spring 2008 coaching time sheets of Timothy Feltman and Patricia Lurks).) Thus, plaintiff's § 1981 claim against Edwards-Clay fails.

**State Law Claims**

In Count V, plaintiff alleges that the Board, Evans and Edwards-Clay's actions violate the Illinois Whistleblower Act, 740 Ill. Comp. Stat. 174/15. Evans and Edwards-Clay argue that the statute creates a cause of action only against an employer, not against individual supervisors. The Court disagrees, as the statute expressly defines "employer" to include supervisors. *See* 740 Ill. Comp. Stat. 174/5 ("'Employer' means: . . . any . . . entity that has one or more employees in this State, including . . . a school district . . . or any State agency whose major function is providing educational services . . . and any person acting within the scope of his or her authority express or implied on behalf of those entities in dealing with its employees."). Accordingly, Evans and Edwards-Clay are proper defendants.

Alternatively, defendants argue that they are immune from plaintiff's claims by virtue of §§ 2-201 and 2-109 of the Illinois Tort Immunity Act. *See* 745 Ill. Comp. Stat. 10/2-201 ("Except as otherwise provided by Statute, a public employee serving in a position involving the determination

of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."); 745 Ill. Comp. Stat. 10/2-109 ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."). A public employee has immunity under § 2-201 only if the contested action involved "both a determination of policy and an exercise of discretion." *Harrison v. Hardin Cnty. Cmty. Unit Sch. Dist. No. 1*, 758 N.E.2d 848, 852 (Ill. 2001). Discretionary acts "are those which are unique to a particular public office" and are made "with[] reference to the official's discretion as to the propriety of the act." *Id.* (quotation omitted). Policy decisions are "those that require the governmental . . . employee to balance competing interests and to make a judgment call as to what solutions will best serve each of those interests." *Id.*[7]

The decisions plaintiff contests, Edwards-Clay's refusal to approve time sheets she thought were inaccurate and Evans' teaching assignments and disciplinary actions, fall squarely within § 2-201. *See* Defs.' Ex. B, Edwards-Clay Decl. ¶¶ 7-9 (stating that she questioned the accuracy of plaintiff's time sheets, balanced his interest in being paid for hours he claimed to have worked against the school's interest in ensuring that scarce resources were paid only for services actually

---

[7]Though it seems anomalous that public employees would have immunity from actions taken against whistleblowers, that is the result dictated by the plain language of the Tort Immunity and Whistleblower Acts. *See* 740 Ill. Comp. Stat.174/1-174/40 (Whistleblower Act, which is silent as to application of Tort Immunity Act); 745 Ill. Comp. Stat. 10/1-204 (defining "injury" for Tort Immunity Act to "include[] any injury alleged in a civil action . . . based upon . . . the statutes . . . of Illinois"); 745 Ill. Comp. Stat. 10/2-201 (immunizing public employees from liability "for an injury" that results from an act of policymaking discretion); 745 Ill. Comp. Stat. 10/2-101 (listing of statutory claims, that does not include Whistleblower claims, that are exempt from Tort Immunity Act); *Kirley v. Bd. of Educ. of Maine Twp. High Sch. Dist. 207*, No. 13 C 1706, 2013 WL 6730885, at *11-12 (N.D. Ill. Dec. 20, 2013) (applying Tort Immunity Act's one-year statute of limitations to Whistleblower Act claim).

rendered and used her judgment to decide not to sign plaintiff's time sheets.); *id.*, Ex. C, Evans Decl. ¶¶ 13-16, 19-24 (stating that he balanced plaintiff's interests with those of the students and the school as a whole and used his best judgment when he decided to remove plaintiff from coaching pending investigation of the pill allegation, to seek a two-week suspension after the investigation concluded, to transfer him to a history position and not to transfer him back to PE); *see also Harrison*, 758 N.E.2d at 853 (holding that school principal's decision not to allow one student to leave school earlier than the rest, which required him to balance a variety of factors and interests, was a discretionary policy decision within the scope of § 2-201); *Arteman v. Clinton Cmty. Unit Sch. Dist. No. 15*, 763 N.E.2d 756, 764-65 (Ill. 2002) (school board employees' decision not to provide safety equipment for students to use with roller blades was immunized by § 2-201); *Williams v. Bd. of Educ. of Chi.*, No. 07 C 6997, 2009 WL 140124, at *6 (N.D. Ill. Jan, 21, 2009) (school principal's decision to recommend teacher's termination was within the scope of § 2-201). Accordingly, Evans and Edwards-Clay have immunity under § 2-201, and thus the Board has immunity under § 2-109, from plaintiff's Whisteblower Act claims.

In Count VI, plaintiff alleges that the Board and Evans are liable for breaching an oral agreement to employ him as the Harlan track coach for the entire 2008 season. It is undisputed, however, that plaintiff's employment was governed by the 2007-2012 CBA between the Board and the teachers' union, to which Evans is not a party, and that the CBA contains a grievance and arbitration procedure. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 10; Defs.' LR 56.1(a) Stmt., Ex. E, CBA, arts. 3 & 13); *see* 105 Ill. Comp. Stat. 5/34-8.1 (stating that "[t]he right to employ, discharge, and layoff shall be vested solely with the board"). Illinois law requires "an employee subject to a collective bargaining agreement . . . [to] at least attempt to exhaust contractual remedies before resorting to

a judicial remedy," and gives him the burden of proving that he did so. *Quist v. Bd. of Trs. of Cmty. Coll. Dist. No. 525*, 629 N.E.2d 807, 810 (Ill. App. Ct. 1994). Plaintiff offers no evidence that suggests he attempted to resolve this claim through the arbitration procedure. Accordingly, Evans and the Board are entitled to summary judgment on this claim.

In Count XII, plaintiff alleges that Brookshire and Evans tortiously interfered with his employment contract with the Board. *See HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989) (stating that tortious interference claim requires proof that defendant interfered with plaintiff's contract with a third party). Plaintiff is not, however, a party to the CBA, the contract that he admits governs his employment with the Board. (*See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 10; Defs.' LR 56.1(a) Stmt., Ex. E, CBA.) Moreover, even if he were, Brookshire and Evans, who are agents of the Board, could be held liable for interference only if there were evidence that they interfered with the contract solely to advance their own interests or to harm plaintiff. *See Cress v. Recreation Servs., Inc.*, 795 N.E.2d 817, 842-43 (Ill. App. Ct. 2003) ("[W]here the plaintiff alleges that the defendant, in his capacity as a corporate officer, tortiously interfered with a contract between the plaintiff and that corporation, the plaintiff must plead that the defendant acted outside the qualified privilege he enjoys as a corporate officer to influence the actions of the corporation," *i.e.*, that defendant "act[ed] *solely* for [his] own gain or *solely* for the purpose of harming the plaintiff . . . .") (quotation, alteration and citations omitted) (emphasis original). There is no evidence that Evans made the contested decisions out of self-interest or malice toward plaintiff or that Brookshire had any involvement in or influence on Evans' decisions. (*See* Pl.'s 56.1(b)(3)(B) Stmt. ¶¶ 72-75 (failing to respond to, and thus admitting, defendants' assertions that Brookshire was not involved

17

in any of Evans' decisions).)   Accordingly, Brookshire and Evans are entitled to judgment as a matter of law on this claim.

In Count XIII, plaintiff alleges that the Board is liable for negligently supervising the individual defendants. The Board can be held liable for negligent supervision only if its conduct was "wilful and wanton." *See* 745 Ill. Comp. Stat. 10/3-108 ("[N]either a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property unless the employee or the local public entity has a duty to provide supervision imposed by common law, statute, ordinance, code or regulation and the local public entity or public employee is guilty of willful and wanton conduct in its failure to provide supervision proximately causing such injury."). Because plaintiff offers no evidence to suggest that it was, the Court grants the Board's motion for summary judgment on this claim.

In Count XVI, plaintiff alleges that the individual defendants conspired to violate his state law rights. Because there is no evidence that defendants violated plaintiff's rights, they cannot be held liable for conspiracy. *See Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994) ("A cause of action for civil conspiracy exists only if one of the parties to the agreement commits some act in furtherance of the agreement, which is itself a tort.").

## Conclusion

For the reasons set forth above, the Court grants Brookshire's motion for summary judgment [234] and grants the summary judgment motion of the Board, Evans and Edwards-Clay [236] as to all claims except the Title VII retaliation claims asserted against the Board in Counts IV and VIII. Judgment is entered in favor of Brookshire, Evans and Edwards-Clay on all claims asserted against them and they are terminated as defendants to this case. At the next status hearing, plaintiff and the Board should be prepared to set dates for filing a final pretrial order and for trial on the remaining claims.

**SO ORDERED.**                                              **ENTERED:  April 2, 2014**

_____
**HON. RONALD A. GUZMAN
United States District Judge**